## In re SIXTH & WISCONSIN TOWER, Inc.
## DUFENHORST v. AITKIN et al.
### No. 6926.

Circuit Court of Appeals, Seventh Circuit.

Dec. 19, 1939.

A. L. Skolnik, of Milwaukee, Wis., for appellant.

Charles B. Quarles, of Milwaukee, Wis., for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court entered on the 21st day of February, 1938, adjudging appellant guilty of contempt of court and requiring him to pay as damages the sum of $600 to the

debtor's trustee. The contempt, as found, occurred during a proceeding to reorganize the debtor under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. A petition for reorganization was filed on November 18, 1935, and debtor's proposed plan of reorganization on October 10, 1936. There was a failure to obtain the necessary consents to the original plan, and on May 3, 1937, certain amendments to the plan were proposed. May 6, 1937, an order was entered submitting the proposed plan as amended to creditors.

May 3, 1937, appellant filed a petition in the bankruptcy proceeding asking for certain relief, particularly to declare debtor insolvent and to determine the classes of creditors affected, and requested that a vote on the amended plan be stayed until these questions and other related issues be determined. A hearing upon this petition was continued until July 6, 1937, the date which had been set for a hearing upon the debtor's plan of reorganization as amended. On June 7, 1937, during the time the amended plan was being submitted to the creditors, appellant, the owner of first mortgage bonds of the debtor, sent a letter to all other first mortgage bondholders, which it is alleged contained material false statements of fact designed to influence the creditors in refusing to consent to the amended plan. On June 21, 1937, subsequent to the acts complained of, an injunction was issued restraining appellant from communicating with any of debtor's bondholders in respect to any of the matters referred to in the petition filed by appellant, or in respect to any other matters referred to in the letter dated June 7, 1937, addressed to bondholders by appellant. At the same time the matters raised in appellant's petition of May 3, 1937, and the motion of the debtor for relief against the activities of appellant, were referred to a Special Master. Hearings were thereafter had before the Special Master and, on October 5, 1937, his report was made, the findings, conclusions and recommendations of which were confirmed by the court on November 6, 1937.

On October 10, 1937, debtor filed its petition asking that appellant be adjudged in contempt of court and be required to pay the debtor's damages resulting from his alleged contumacious act. The basis for the petition appears to be that the subject matter of the letters sent to bondholders by appellant was the same as that contained in the petition filed by appellant on May 3, 1937, a hearing on which was continued by the court on May 15, 1937, and that the subject matter being before the court for consideration, had the same effect as an order enjoining appellant from doing that which is complained of.

Appellant answered the petition that he be adjudged in contempt, by affidavit, and requested a trial. His request was refused and a hearing, consisting solely of arguments of counsel on the debtor's petition and appellant's answer, was had, and at the conclusion thereof appellant was adjudged in contempt of court. The report of the Special Master is not contained in the transcript of the record, but it is argued by appellant and seems to find support in the findings of fact and conclusions of law that the adjudication in contempt was based upon the testimony taken before the Special Master, although the issue in the contempt proceeding was not before the Master—in fact, the petition requesting that appellant be adjudged in contempt was not filed until some time after the report of the Master.

■ The essential question presented is whether the sending of a letter by one bondholder to others during the period when a plan of reorganization in a section 77B proceeding has been submitted to the creditors for their approval, without an order specifically prohibiting such action, can be made the basis of a proceeding in contempt, and if so, there is the further question as to whether appellant was entitled to offer testimony upon the issue presented by the petition filed against him and his answer thereto. Appellant relies upon Section 268 of the Judicial Code, 28 U.S.C.A. § 385, as limiting the power of Federal Courts in contempt proceedings. So far as here material, it provides:

"* * * Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

He argues that the only applicable provision of this section is the last clause, and that, inasmuch as there was no order, rule or decree enjoining him from sending the

letter in question, that the court was without power to entertain the proceedings. On the other hand, appellee argues, not that there was an express order, but that the proceedings had in court to which appellant was a party, amounted to or had the effect of such order, and further, that even though there was not such an order, that the alleged misbehavior of appellant was such "as to obstruct the administration of justice." In other words, appellee's position is that such misbehavior may amount to a civil contempt. Both sides, without purpose, so far as we can perceive, undertake to distinguish between criminal and civil contempt for the reason that they both finally admit that this is civil contempt and not criminal. It plainly is such. Terminal R. R. Ass'n v. United States, 266 U. S. 17, 45 S.Ct. 5, 69 L.Ed. 150; Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997; In re Fox, 3 Cir., 96 F.2d 23.

Appellee's argument that the proceeding before the court was in effect an order enjoining appellant, is not tenable. Even assuming that appellant, in his petition filed in the proceeding, raised the same question and made the same unwarranted charges against the debtor and its officers as those contained in the letter, and that the petition was before the court undisposed of, we do not think that could take the place of an order of injunction so as to fix liability upon the appellant. In Terminal R. R. Ass'n v. United States, supra, 266 U.S. page 29, 45 S.Ct. page 8, 69 L. Ed. 150, it is said:

"In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read."

In the instant case there was not even a defective order and we have no hesitancy in concluding that the proceeding can not rest upon something that transpired in the court under the guise that it had the effect of an order.

Appellee also contends that the power of the court to punish for contempt may properly be predicated upon the language of the statute, "the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice." In other words, it is argued

that a civil contempt may be based upon this clause. No authority cited by appellee and none which we are able to find has so held. Kirk v. United States, 9 Cir., 192 F. 273, cited by appellee, was an action for criminal contempt instituted by the Government in which the defendants were charged with an attempt to corrupt and influence jurors. This case is not even remotely applicable. Craig v. Hecht, 263 U. S. 255, 44 S.Ct. 103, 68 L.Ed. 293, also relied upon, is a case wherein the defendants were found guilty of contempt for criticising the action of the court, and likewise was a criminal proceeding. Justice Taft, in a concurring opinion, 263 U.S. page 278, 44 S.Ct. page 107, 68 L.Ed. 293, said:

"If the publication criticizes the judge or court after the matter with which the criticism has to do has been finally adjudicated and the proceedings are ended so that the carrying of the court's judgment cannot be thereby obstructed, the publication is not contempt and cannot be summarily punished by the court however false, malicious or unjust it may be. The remedy of the judge as an individual is by action or prosecution for libel. If, however, the publication is intended and calculated to obstruct and embarrass the court in a pending proceeding in the matter of the rendition of an impartial verdict, or in the carrying out of its orders and judgment, the court may, and it is its duty to protect the administration of justice by punishment of the offender for contempt."

Thus it is made plain that the sole basis for the charge is that the offending party intends or calculates to prevent "an impartial verdict, or in the carrying out of its orders and judgment." There is no room for argument in the instant case that any order or judgment of the court was or could have been interfered with by the writing of the condemned letter.

Another case relied upon is that of Clay v. Waters, 8 Cir., 178 F. 385, 21 Ann.Cas. 897, but in that case the court found that its order had been violated.

A case which is in point is that of In re Probst, 2 Cir., 205 F. 512, 513, where it is said:

"It seems to us that the bankrupt's misappropriation of the money in his hands is not within the first of these clauses 'misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice.' He is not an 'officer

of the court' who has misbehaved in his official transactions. Our attention has been called to no writ, process, order, rule, decree, or command of the court which he has disobeyed. Had an order been made directing him to pay the amount of the misappropriated money into the registry of the court, and he had disobeyed such order, he would be within the provisions of the section; but on the record presented here we cannot find authority for the entry of the order sought to be reviewed. This may be a highly technical ruling; but where Congress has been so industrious to restrict the natural inherent powers of a federal court, scrupulous attention to the limitations it has imposed would seem to be the proper course."

This quotation is cited with approval in Morgan v. United States, 8 Cir., 95 F.2d 830, 835, and the court also distinguishes the case of Clay v. Waters, supra, cited and relied upon by appellee.

Having in mind that the offending matter in the instant case was directed at the debtor and not the court, the observation of the court in McCann v. New York Stock Exchange et al., 2 Cir., 80 F.2d 211, 213, seems pertinent. There, as here, it was *sought to justify the contempt upon two theories;* first, that the defendant had violated an order of court, and second, because his communication was ipso facto a contempt of court. The second was made to turn upon the meaning of the phrase "so near thereto as to obstruct the administration of justice." The court, 80 F.2d page 213, said: " * * * The defendants' theory seems to be that by undermining their confidence in their attorneys the course of justice may be impeded; at any rate, that is their only even colorable support, for they cannot enjoin, and a fortiori cannot punish as a contempt, mere abuse of themselves, or of their companies, or of the officers of the exchanges, even though it be libelous. Francis v. Flinn, 118 U.S. 385, 6 S.Ct. 1148, 30 L. Ed. 165; American Malting Co. v. Keitel, 209 F. 351, 353–355 (C.C.A.2)." and concluded that the libelous matter sent out in *a publication did not amount to contempt per se.*

The distinction which the courts have so often made between the two classes of contempt well nigh precludes the idea that a civil contempt could be based upon "misbehavior of any person in their presence, *or so near thereto as to obstruct the ad-* ministration of justice." In Bessette v. W. B. Conkey Co., supra, the court, 194 U.S. on page 329, 24 S.Ct. on page 667, 48 L.Ed. 997, in referring to criminal contempt, said:

" * * * It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature."

With reference to civil contempt, the court on the same page, said:

" * * * On the other hand, if, in the progress of a suit, a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt proceeding. The punishment is to secure to the adverse party the right which the court has awarded to him."

In Re Fox, supra, the court 96 F.2d on page 25 makes the distinction thus:

"In civil contempt the punishment is remedial, to secure an end; while in criminal the punishment is punitive, to vindicate the authority and dignity of the court. * * * Punishment in criminal contempt cannot undo or remedy the thing which has been done, but in civil contempt punishment remedies the disobedience."

In Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 448, 31 S.Ct. 492, 501, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, it is said:

" * * * The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the court's authority, or whether it is remedial, by way of a coercive imprisonment, or a compensatory fine, payable to the complainant."

There can be nothing in the acts charged to the appellant in the instant case in which the public at large was interested, or that reflects upon or refers to the court's authority, honor or dignity. The proceeding was instituted at the instance of an individual litigant for an alleged wrong done to the individual rather than to the court.

We conclude that the court was without power to punish appellant for contempt, under the circumstances presented. It follows there is no occasion for us to consider other questions raised and argued.

The judgment of the District Court is reversed.

EVANS, Circuit Judge (concurring in part).

Approving the reversal, I nevertheless cannot subscribe to the view that the court is powerless to protect, through civil contempt proceedings, one, or a group, who as creditor parties before the court, are working with and under the direction of the court to reorganize an insolvent debtor, against a third party or group of third parties, who, in order to discourage bondholders and to depress bond prices that they may purchase bonds at greatly depressed prices, circularize the bondholders with false and defamatory statements, known to be false and injurious to the plan which the court has ordered submitted and the creditors or creditors' committee suffer special damage.

I believe the order directing the payment of $600 to the creditors must be reversed in this case because of failure to properly prepare the issues and to provide a separate hearing of the contempt issues. Against denying relief in such proceedings altogether because beyond the powers of the District Court, I protest.

To briefly capitulate the essential facts: The court on petition duly and properly filed under section 77B, of the Bankruptcy Act acquired jurisdiction of the property and of the debtor corporation.[1] The property was thenceforth in *custodia legis*.[2] The court was in duty bound to conserve and protect it. Against one who invaded that possession (to burn it, say), criminal contempt proceedings would lie.[3] Not only was there a duty on the part of the court to conserve the property, it was required to direct and assist in a reorganization of the debtor.[4] The handicaps and embarrassments of insolvency, or of inability to meet debts as they became due, with consequent preferences and advantages, were to be avoided. In this effort the creditors were necessary participants. Without them and the assent of a certain percentage of them, reorganization was impossible.[5] They were in a sense *quasi* officers of the court. In the instant case there was apparently but a single bond issue, so no clash of interests between groups of security holders was possible. Even in such cases, the court could expect or reasonably demand conduct usually accorded by a *quasi* court official.

Under such circumstances, a bondholder who steals the list of creditors, falsifies their addresses or effects a misstatement of the plan of reorganization to thwart the effort of the court and its officers and the creditors who helped in its preparation would clearly be guilty of criminal contempt. Only in degree would this act differ from that of the incendiarist who burns the building in the court's custody.

Likewise distinctions are only in degree between the incendiarist, the creditor who stole and falsified the list of creditors or the terms of the plan, and an unscrupulous creditor who, cunningly and maliciously, seeks to defeat the action of the court, its officers, and the creditors who in good faith participated in preparing and submitting a plan of reorganization by wilfully and maliciously circulating false statements in order that bondholders will react unfavorably to the plan proposed and also in despair and discouragement conclude to rid themselves of their holdings. As their bonds are not widely salable, the overreaching creditor profits by his false and fraudulent statements at the expense of the parties whose interests the court is in duty bound to protect. Worse still the false statements of the intriguer are made to discredit the integrity of the action and conduct of the court and of the numerous creditors who participated in preparing the plan of reorganization. It indirectly reflects on the court, as being either stupid, indifferent or possibly not free of improper influences. In a case such as described, the power to punish for criminal contempt is as clear as it would be to deal

---

[1] 11 U.S.C.A. § 207 sub. a; Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060.

[2] Straton v. New, 283 U.S. 318, 51 S. Ct. 465, 75 L.Ed. 1060; Acme Harvester Co. v. Beekman Co., 222 U.S. 300, 32 S. Ct. 96, 56 L.Ed. 208; Cameron v. U. S., 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448; Lazarus, Michel & Lazarus v. Prentice, 234 U.S. 263, 34 S.Ct. 851, 58 L.Ed. 1305.

[3] 11 U.S.C.A. § 11; White v. Schloerb, 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405; see also Ex Parte Tyler, 149 U.S. 164, 181, 13 S. Ct. 785, 37 L.Ed. 689; Wiswall v. Sampson, 55 U.S. 52, 65, 14 How. 52, 14 L. Ed. 322.

[4] 11 U.S.C.A. § 207, sub. c.

[5] 11 U.S.C.A. § 207 sub. e.

with one who burned the building. The duty to protect the plan and its sponsors against false and malicious assault is quite similar to the duty the court owes to the creditors to protect their physical property in the court's custody.

In speaking of contemners, it should be made clear that I am speaking of one who writes falsely and maliciously and with evil intent to defeat a plan made in good faith and who misstates the material facts to security holders. It is material representations maliciously made to deceive in order to enrich the maker of them which is the action that is here condemned. It is not the desire of the court to criticise or condemn efforts honestly made in good faith, to point out weaknesses in plans or oppose adoption of a plan which the opposer honestly believes might be improved.

I am convinced that upon facts stated, a court of equity has, through civil contempt proceedings, the power to protect litigants and the property in its custody against false and malicious attacks by adversaries or even third parties.

All the parties were before the court. The property had been turned over to the court. But the parties and property were in court with the understanding that the court would *expeditiously* turn the property back to the parties entitled thereto, after a fair plan of reorganization has been made effective, which will give to all security holders, greater security and better assurance of protection of their respective rights.

The majority opinion holds, as the contemner (described in class three above) argued, that punishment remedial in character which would make the injured parties whole, can not be had. The accused may be held in criminal contempt, perhaps (although that is not expressly held), but he cannot be punished for civil contempt.

On innumerable occasions courts have considered the differences between civil and criminal contempt.[6] The procedural differences were pretty well settled in Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L. R.A.,N.S., 874.[7]

Likewise the differences in purposes and objectives are well defined.[8] In one case the fine goes to the Government. In the other the amounts paid by contemner usually go as damages to the party who has been injured. In civil contempt the punishment is remedial, serves only the purposes of a party to the litigation, and is not intended as a deterrent to offenses against the public. McCrone v. U. S., 307 U.S. 61, 64, 59 S.Ct. 685, 83 L.Ed. 1108.

The act or acts out of which the contempt arises may be the basis of either civil or criminal contempt or both.[9] Just as one who assaults and beats another may be sued for damages in a civil suit or prosecuted in a criminal action, or both, so, to take an illustration, may one who, in a divorce action, is ordered to turn over property to his spouse, and in wilful open defiance thereof destroys it, be pursued either in criminal or in civil contempt proceedings. In fact both courses may be pursued, at the same time.

It is argued, however, by counsel for contemner, and his views are accepted by the majority of the court, that one is amenable to punishment for civil contempt only when it appears that an order of court has been made which is violated and this is so because the power of the court is limited by statute. Sec. 268 of the Judicial Code, 28 U.S.C.A. § 385.

Is this position sound? Differences of opinion account for the variance in our conclusions.

The power to punish for civil contempt has always been recognized as an inherent power of the court, necessary to the performance of the court's duties and necessary to fulfil its obligation to settle differences between litigants or controversies

---

[6] McCrone v. U. S., 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874; Longsdorf, Cyclopedia of Federal Procedure, Sec. 3711; Dakota Corp. v. Slope County, 8 Cir., 75 F.2d 584; American Jurisprudence, Vol. 15, "Contempt," Sec. 6; 17 Corpus Juris Secundum, "Contempt," §§ 5, 6; Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715

[7] Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451; McCann v. N. Y. Stock Exchange, 2 Cir., 80 F.2d 211; Cyclopedia of Federal Procedure, Sec. 3711, Secs. 3716–3733; American Jurisprudence, Vol. 15, "Contempt," Sec. 66, et seq.

[8] Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; American Jurisprudence, Vol. 15, "Contempt," Sec. 6.

[9] Lamb v. Cramer, 285 U.S. 217, 52 S. Ct. 315, 76 L.Ed. 715.

pertaining to property turned over to the court.[10]

A proper construction of the Federal statute involved, necessitates our keeping in mind these purposes. The exercise of this power by courts of equity grew out of the court's performance of its duties and was necessary to their performance.

The exercise of the power was, of course, not the action of a judicial officer seeking an enforced outward manifestation of obsequious respect or homage.

The statute reads:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

This statute is a declaration of the law of criminal contempt. It is not a statute of inhibition, but rather, in the field of criminal contempt, it is a recognition of the courts' power to punish for contempt under certain conditions.

It does not deal with civil contempts nor restrict courts in the exercise of their duty to control, through civil contempt proceedings, the conduct of litigants in pending litigation or protect property in their custody.

If it were an attempt so to do, it might well be doubted whether Congress could take from a court of equity, the power to protect property in its custody. Congress may properly limit or restrict the jurisdiction of the United States District Courts. But, if equity jurisdiction is conferred on the District Court, the latter's powers to effectuate its jurisdiction, through contempt proceedings, can hardly be disputed. Certainly no restrictions should be implied for it is inconsistent with the grant of jurisdiction to deny effective means of exercising and enforcing it.

And the argument becomes more persuasive, as here, where the source of the legislation (bankruptcy) is traceable directly to the Constitution. Congress, it is true, may undoubtedly grant to, or withhold from, District Courts, such jurisdiction. Having granted[11] it, may it say that in the exercise of such jurisdiction, the court is powerless to carry out the objects of bankruptcy proceedings and bankruptcy legislation.

The authority of a court in contempt cases seemingly has always been somewhat clouded in doubt and dispute.[12] For reasons more human than logical, contempt cases usually produce more fire, heat, and smoke than other litigation. The court's authority is more readily challenged and the exercise of this power more quickly denied than in other litigation. Perhaps this is due to the fact that two common fields wherein contempt proceedings arise are in divorce and labor cases, and in both classes of litigation the temper of litigants is apt to be easily inflamed. Likewise courts are rather quick to resent the charge that their action is unauthorized and autocratic instead of in protection of an aggrieved litigant. See discussion in Michaelson v. United States, 7 Cir., 291 F. 940; Id., 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451, a case decided by this court.

Some of the confusion which exists in contempt cases arises out of the fact that the Supreme Court has not passed on certain questions and inferior courts have not been in accord in their rulings. Likewise, we find decisions of inferior courts cited and followed, which have been expressly or inferentially overruled by later Supreme Court decisions.

---

[10] Michaelson v. United States, 7 Cir., 291 F. 940; Id., 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451; Longsdorf, Cyclopedia of Federal Procedure, Sec. 3705; Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997; Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Marcus v. Pennsylvania Trust Co., 3 Cir., 23 F.2d 303; American Jurisprudence, Vol. 12, "Contempt," Sec. 40 et seq.; Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; Corpus Juris Secundum, Vol. 17, "Contempt," § 43.

[11] 11 U.S.C.A. §§ 11 (13) (16).

[12] Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186.

The discussion of questions somewhat similar to ours by the Supreme Court in Michaelson v. United States, supra, and the opinion of the Circuit Court of Appeals in the same case are enlightening.

Although the authority was sharply challenged by counsel for the contemner, the Supreme Court ruled [266 U.S. 42, 45 S. Ct. 20, 69 L.Ed. 162, 35 A.L.R. 451]:

"That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice."

Likewise, the attachment of such power when courts are created by legislative enactment is expressly recognized, for the Court said:

"The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once become possessed of the power."

Perhaps more significant is the statement:

"The attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative."

Equally clearly the Court recognizes the power of Congress to regulate its use in criminal contempt for it said:

"It may be regulated within limits not precisely defined."

That there is a difference between regulating the exercise of criminal contempt and taking from a court of equity its inherent power is also made clear.

" * * * We first inquire whether the proceeding contemplated by the statute is for a civil or a criminal contempt. If it be the latter—since the proceeding for criminal contempt, unlike that for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause * * * *we are at once relieved of the doubt which might otherwise arise in respect of the authority of Congress to set aside the settled rule that a suit in equity is to be tried by the chancellor without a jury unless he choose to call one as purely advisory.* * * * The statutory extension of this constitutional right to a class of contempts which are properly described as 'criminal offenses' does not, in our opinion, invade the powers of the courts as intended by the Constitution or violate that instrument in any other way."

Passing for the moment the question of the power of Congress to abrogate a court of equity's inherent power to enforce through contempt its control of litigants and litigation and coming to a construction of the section in question, the canon which is largely controlling requires us to avoid unconstitutionality and invalidity, if possible.

The first sentence of this section reads:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by *fine* or *imprisonment*, at the discretion of the court, *contempts of their authority.*" 28 U.S.C.A. § 385.

The reference to *fine* and *imprisonment* and the other italicized words, rather clearly indicates that Congress had in mind, and was speaking only of, criminal contempt. The balance of the section (see majority opinion) is likewise indicative of a construction which restricts it to criminal contempt.

This statute was in force when Justice Sutherland, speaking for the Court in the Michaelson case, made the distinction (in so far as congressional power goes) between civil and criminal contempt. To hold therefore that Congress was restricting the power of a court of equity to exercise its inherent powers to punish for contempt when it spoke of courts having power to punish by *fine* or *imprisonment* is to ignore the distinction between an inherent power in a court of equity and the court's power in an independent proceeding, in the nature of a criminal action, wherein the punishment is a fine or imprisonment and the Government is the complainant. The latter power is subject to reasonable regulation by Congress. The former is an inherent power of the court which attaches when the jurisdiction of the court is created, and its abridgement is inconsistent with the action of Congress which gave to the court jurisdiction in such equity matters.

The word "such" in the second sentence seemingly refers to the same class of contempt as is defined in the first sentence, to-wit, criminal contempt.

The conclusion that the statute in question was not intended to curtail, and did not curtail the inherent power of a court of equity to protect, through civil contempt proceedings, litigants before it, or property in its custody is supported by at least one case in the Supreme Court and by one de-

546

cision of this court.[13] True, the decision of this court was reversed because the contempt there under consideration was criminal in character and therefore subject to regulation by Congress within certain limits. The discussion by Judge Baker of the power of Congress to abridge the court's authority to proceed in civil cases by civil contempt proceedings was not overruled, but on the other hand, was not unfavorably received.

In the opinion in Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715, we search in vain for an order which the contemner had violated. It does appear, however, that the court was dealing with property that was within *gremio legis*.

In the face of the two last named decisions, one by this court and one by the Supreme Court, we are not justified in holding that the statute in question took away from the court of equity its power to protect property within its jurisdiction. A court of bankruptcy must, if it is to render the service which the statute exacts of it, be authorized to protect litigants and property. In other words, it must be given the power to punish for civil contempt which impliedly attends the grant of jurisdiction in bankruptcy matters to District Courts and without which the grant of judicial power is ineffectual.

---

[13] Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Michaelson v. United States, 7 Cir., 291 F. 940; 17

Corpus Juris Secundum, "Contempt," § 21, and cases there cited.